UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TOM & JOHNS PROPERTY LLC,

    Plaintiff,

v.                                                  Case No. 1:11-CV-00194

JPMORGAN CHASE BANK, N.A.,         HON. GORDON J. QUIST

    Defendant.
_____/

## OPINION ENFORCING SETTLEMENT AGREEMENT

### Background

On January 18, 2011, Plaintiff commenced this action, which Defendant removed to this Court based on original diversity jurisdiction under 28 U.S.C. § 1332(a). (Dkt. #1.) The action concerns real property located at 15275 Francis Road, Lansing, MI 48906 (the "Property"). The Court allowed the parties to forestall their Rule 16 scheduling conference to give them time to resolve the dispute. On March 25, 2011, Plaintiff sent an email and attachment with the "direct costs" for the Property to defense counsel, stating "[i]f your client is interested in reimbursing these costs, my client is willing to provide a deed to [Defendant] for the Property." (Dkt. #11, Ex. 1, at 1.) On April 15, 2011, Plaintiff sent Defendants a modified and correct version of the direct costs associated with the Property. (Dkt. #11, Ex. 2, at 1.) The correct version indicates the total asking price for the Property is $100,000. (Dkt. #11, Ex. 2, at 2.) On April 25, 2011, Defendant indicated it was still evaluating the offer. (Dkt. #11, Ex. 3, at 1.) At some point between April 25, 2011, and June 2, 2011, Plaintiff's counsel and Defendant's counsel had a conversation agreeing to certain

terms of a settlement agreement. On June 2, 2011, Defendant's counsel sent an email to Plaintiff's counsel confirming the following:

> To confirm our conversation, Chase agrees to pay the "Modified Calculation" amount, i.e., $100,000, for the deed to the Property assuming that the title work we discussed comes back "clean." The litigation will be dismissed with prejudice, of course, and we will need a settlement agreement signed. I'll let you know as soon as we have the title work completed.

(Dkt. #11, Ex. 4, at 1.)

On June 15, 2011, this Court contacted the parties regarding the status of the case and Defendant's counsel responded: "I'll let [Plaintiff's counsel] confirm, but my understanding is that we have a settlement in principle and that we are in the process of working out the details." (Dkt. #11, Ex. 5, at 1-2.) On June 16, 2011, Plaintiff's counsel responded: "That is correct. I anticipate a settlement shortly." (Dkt. #11, Ex. 5, at 1.) That is, Plaintiff confirmed that the parties agreed to a settlement in principle.

On June 21, June 30, and July 11, 2011, Plaintiff's counsel inquired with Defendant's counsel regarding the status of the settlement agreement. (Dkt. #12, Ex. 1-3.) On July 14, 2011, Defendant's counsel sent a settlement agreement to Plaintiff's counsel for Plaintiff or Plaintiff counsel's review. (Dkt. #12, Ex. 4, at 2-9.) On July 20, 2011, Plaintiff's counsel wrote to Defendant's counsel that he had reviewed the settlement agreement and had three changes that he would like to make, and "[i]f we can make those changes I will get it to [Plaintiff]." (Dkt. #12, Ex. 5, at 1.) Contrary to the first settlement agreement, the changes resulted in Defendant paying all of the real estate taxes due and payable on or prior to the closing date, and also paying all county and transfer taxes. This is the settlement agreement that Defendant asks this Court to enforce.

On July 20, 2011, this Court inquired with counsel regarding the status of the case. (Dkt. #13, Ex. 1, at 1.) Defendant's counsel responded that the parties were "working out some remaining details" and that, in his belief, a Rule 16 Conference was not necessary. *Id.*

On August 1, 2011, Plaintiff's counsel informed Defendant's counsel that Plaintiff "is not willing to take a buy-out from [Defendant] and transfer title over." (Dkt. #13, Ex. 2, at 1.)

On August 8, 2011, Defendant moved this Court to:

(i) enforce the settlement agreement as altered by Plaintiff's July 20, 2011, request;

(ii) enter an order dismissing Plaintiff's Complaint with prejudice;

(iii) award [Defendant] its costs and attorney's fees incurred in having to bring this motion; and

(iv) grant any other relief this Court deems appropriate.

(Dkt. #10, at 2.) Plaintiff has not responded to the motion within the time set forth in Local Rule 7.2(c).[1]

## Discussion

Settlement agreements are a type of contract and are therefore governed by contract law. *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 487 (6th Cir. 1973). Thus, "[w]hether [a settlement agreement] is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986). Since the primary question is whether the parties entered into a settlement agreement, which is a question of contract law, this Court must apply the choice of law rules of the forum state to decide which state's law to apply. *See Prof'l Consultation Servs. Inc., v. Schaefer & Strohminger Inc.*, 412 F. App'x. 822, 824 (6th Cir. 2011).

> In [*Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 528 N.W.2d 698 (1995)], the Michigan Supreme Court generally endorsed the choice-of-law test in the Restatement (Second) of Conflict of Laws. *Id.* at 703; *see Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008). When a contract does not express a choice of law, the court should consider several factors in order to "balance the expectations of the parties . . . with the interests of the states involved," *Uhl*, 512

---

[1] Counsel who practice in this Court are expected to be familiar with and abide by the Local Rules.

3

> F.3d at 302, including "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties," Restatement (Second) of Conflict of Laws § 188(2).

*Id.*

Michigan law will govern the instant case. The parties' discussions were conducted through their counsel, both of whom are located in Michigan. Most importantly, the subject matter of the contract and dispute is real property located in Michigan. *See Prof'l Consultation Servs. Inc.*, 412 F. App'x. at 825 (noting that "the location of the subject matter of the contract matters most when a contract 'deals with a specific physical thing . . . or affords protection against a localized risk'") (citing Restatement (Second) of Conflict of Laws § 188 cmt. e.). Furthermore, the parties would expect Michigan law to apply in this case, and no other state has an interest in applying its law to the current dispute to further such an interest.

The settlement agreement that Defendant asks the Court to enforce is a real estate contract. In Michigan, all essential terms of an agreement to sell real estate must be in a writing signed by the party or parties to be held to the agreement for that agreement to be enforceable. *Kojaian v. Ernst*, 442 N.W.2d 286, 288, 177 Mich. App. 727, 730 (1989). The material terms of a real estate contract which must be agreed upon before an agreement becomes enforceable and binding are the identification of the parties, the property, and the consideration. *Zurcher v. Herveat*, 605 N.W.2d 329, 341, 238 Mich. App. 267, 290-91 (1999).

Michigan courts apply an objective test to determine whether there has been mutual assent to a contract. *Rood v. Gen. Dynamics Corp.*, 507 N.W.2d 591, 598, 444 Mich. 107, 119 (1993). In applying this standard, a court must look to all relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent. *Id; see also RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001)

(finding that although the parties had not yet formalized their agreement in writing, their "objective acts . . . reflect[ed] that an agreement had been reached"). Attorneys can have the actual and apparent authority to settle lawsuits on behalf of their clients. *See Capital Dredge & Dock Co. v. City of Detroit*, 800 F.2d 525, 530-31 (6th Cir. 1986).

Here, the parties' objective manifestations establish that each party assented to the essential terms of their real estate settlement agreement. First, in the June 15, and June 16, 2011, email correspondence, where Plaintiff confirms that a settlement in principle has been reached, the subject of the email is "Tom & John's v. JPMorgan; 1:11cv194" - undoubtedly referring to the parties and the dispute over the Property. Second, Plaintiff's March 25, and April 15, 2011, emails offer Defendant a deed to the Property in consideration for $100,000. Defendant's June 2, 2011, email confirmed acceptance of the offer. Moreover, the June 15, and June 16, 2011, emails also objectively show that the parties manifested assent to a "settlement in principle." When this Court asked the parties if they needed to schedule a Rule 16 conference, the parties agreed that it was not necessary because a settlement in principle had been reached. Last, Defendant had no reason to believe Plaintiff's counsel did not have authority to negotiate a settlement, and therefore Defendant could rely on Plaintiff counsel's apparent authority.

However, the objective manifestations do not establish assent to the written settlement agreement drafted by Defendant. After reviewing the eight-page settlement agreement, Plaintiff's counsel asked Defendant to make changes and stated, "If we can make those changes I will get it to Tom." This writing does not manifest acceptance, or even conditional acceptance upon revising the settlement agreement; it merely states Plaintiff's counsel would forward the settlement agreement to Plaintiff after the changes were made. Subsequently, Plaintiff attempted to reject the entire settlement. Unfortunately for Plaintiff, the "agreement in principle" had already been agreed upon, even though the details had not.

Furthermore, the objective manifestations do not establish that the parties agreed to details with respect to the title of the property.  Even though Defendant mentions title work in its June 2, 2011, email confirming acceptance, this Court finds no manifestations from Plaintiff assenting to or offering title in any particular manner.

Because the parties agreed to all of the essential terms but not to all of the terms of the written agreement Defendant seeks to enforce, this Court is enforcing only the terms of the settlement agreement to which the parties have objectively manifested that they have agreed.  *Cf. Wilmington Fin., Inc. v. Imperial Mortg. Corp.,* 2008 WL 4155682 (E.D. Pa. 2008).  This Court finds no basis, or even argument, to grant Defendant's request for attorney's fees.

A separate order consistent with this opinion will issue.


Dated:  September 29, 2011                                       /s/ Gordon J. Quist
                                                                                       GORDON J. QUIST
                                                                          UNITED STATES DISTRICT JUDGE